COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Huff and Senior Judge Annunziata

UNPUBLISHED

ROBERT C. MACIAS

v.      Record No. 0392-20-2

HOPEWELL DEPARTMENT
  OF SOCIAL SERVICES

ROBERT C. MACIAS

v.      Record No. 0394-20-2

HOPEWELL DEPARTMENT
  OF SOCIAL SERVICES

ROBERT C. MACIAS

v.      Record No. 0395-20-2

HOPEWELL DEPARTMENT
  OF SOCIAL SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
NOVEMBER 4, 2020

FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
Carson E. Saunders, Jr., Judge

(Paul S. Roskin; Vergara & Associates, on briefs), for appellant.
Appellant submitting on briefs.

(Joan M. O'Donnell; Jessica V. Bailey, Guardian *ad litem* for the
minor children; Old Towne Lawyer, LLC, on brief), for appellee.
Appellee and Guardian *ad litem* submitting on brief.

Robert C. Macias (father) appeals the circuit court's orders terminating his parental rights to

his three children. Father argues that the circuit court erred by finding that there was sufficient

evidence to terminate his parental rights under Code § 16.1-283(B) and (C)(2). Upon reviewing the

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

record and briefs of the parties, we conclude that the circuit court did not err. Accordingly, we affirm the decision of the circuit court.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Father and Nicole Johnson (mother) are the biological parents to the three children who are the subject of this appeal.[2] On March 13, 2018, the Hopewell Department of Social Services (the Department) received a report that mother had overdosed on heroin in the home while the children were present. The Department entered into a safety plan with father stating that mother had to be supervised around the children. On March 26, 2018, mother was arrested for assaulting father, and the Hopewell Juvenile and Domestic Relations District Court (the JDR court) issued an emergency protective order.[3] On April 3, 2018, the Department received another report that mother had overdosed in the home with the children present. The Department tested father for drugs, and he tested positive for opiates and benzodiazepines.

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] The circuit court terminated mother's parental rights, and she appealed the circuit court's rulings. See Johnson v. Hopewell Dep't of Soc. Servs., Record No. 0567-20-2.

[3] The domestic assault and battery charge was dismissed ultimately.

On April 4, 2018, the Department removed the children from their parents' care and placed them in foster care because mother and father could not identify any possible relative placements. The children were two, seven, and eight years old. The JDR court entered an emergency removal order and a preliminary removal order. The JDR court subsequently adjudicated that the children were abused or neglected and entered a dispositional order.

The Department was concerned about mother's and father's unstable housing, domestic violence, and drug abuse. The Department required father to participate in a psychological and parental capacity evaluation, individual counseling, couple's counseling, parenting classes, and substance abuse treatment. The Department also required father to submit to random drug testing and to maintain safe and stable housing. Father was inconsistent in complying with the required services.

The parents had a history of domestic violence. Beginning in August 2010 and continuing until March 2018, mother had been arrested for assault and battery against father on three occasions, with all charges being *nolle prosequied* or dismissed. During the same time period, father had been arrested for assault and battery against mother on five occasions, with all charges ultimately being *nolle prosequied* or dismissed.[4] The Department required mother and father to participate in counseling for domestic violence, so they went to an assessment for domestic violence. Mother and father enrolled in a domestic violence program, but they stopped participating in the program because of its cost. Father enrolled in a Batterer's Intervention Group and attended five out of seventeen sessions. Two or three weeks before the circuit court hearing, mother and father told the Department that they had completed a domestic violence program, but the Department was unable to confirm their participation.

---

[4] On August 21, 2012, the JDR court found that the facts were sufficient to find guilt for father but deferred the disposition of an assault and battery charge; the JDR court dismissed the matter in 2014.

Father participated in a psychological evaluation, and it was recommended that he complete substance abuse counseling, attend narcotics anonymous meetings, and participate in psychotherapy. The Department was unable to verify father's participation in counseling. Father enrolled in substance abuse treatment but was discharged for being noncompliant. Father had been taking Suboxone and was referred to a program at District 19, but he later enrolled himself in a methodone program in Newport News, where he had moved.

In addition to its other referrals and services, the Department arranged for father to visit with and call the children. Initially, the visitations were arranged with the foster parents directly, but subsequently stopped because "the relationship between the foster parents and parents became strained." The foster mother testified that during several visits, the parents argued with each other in front of the children, which upset the children. Thereafter, the Department supervised the visitations and telephone calls. Father regularly attended the visits and participated in the phone calls.

By October 2018, the parents had moved out of Hopewell, which limited the Department's ability to provide services to them. Father had moved to an apartment in Newport News to be closer to his job. Mother had moved to Ohio, but subsequently returned to Virginia. In April 2019, mother and father moved to a three-bedroom mobile home in Newport News.

On May 3, 2019, the Department filed a petition for a permanency planning hearing and recommended a foster care goal of adoption. On June 24, 2019, the JDR court approved the foster care goal of adoption, and father appealed the JDR court's ruling. On July 31, 2019, the JDR court terminated father's parental rights, and he appealed the rulings to the circuit court.

On January 31, 2020, the parties appeared before the circuit court. The social worker testified that the parents had not made "significant progress" toward achieving the Department's goals. The social worker explained that when the Department asked father to do something,

there was "a lot of conniving, scheming, . . . [and] no services [had] been completed or proved to be completed." The Department had been unable to verify father's participation and completion of substance abuse treatment, anger management program, domestic violence program, and counseling.

The Department presented evidence that when the children entered foster care, they "basically did or [said] what they wanted." The foster mother testified that the older two children were "violent toward each other" and would physically fight one another. All three children needed "extensive dental care" and had to be treated for worms. While in foster care, the Department offered the children individual therapy and in-home counseling. The social worker described the children as "more stable with their behaviors"; however, the foster mother testified that the older child still needed to work on controlling her behavior.

Father testified that he met mother eleven years earlier, but they never married. Father was the primary wage earner for the family. Father acknowledged that he and mother had had some domestic problems in the past, and they had separated for a few months at a time. Father also admitted to using drugs in 2018, which led to the removal of the children. Father explained that he did not have sufficient money to go to a clinic, so he purchased Suboxone strips from a friend. Then, he and mother separated; she moved to Ohio and he moved to Newport News after finding a new job. He and mother later reunited and started living together in a three-bedroom mobile home in Newport News. According to father, the police had not been called to their residence. Father believed that the police intervention in the past was "a hundred percent drug-related."

Father testified that he and mother had been involved in substance abuse treatment at Pinnacle Treatment Center, where they received methadone daily and participated in individual and group counseling. Father also claimed that he and mother completed a thirty-six-hour

parenting class and that he completed an anger management class. Father believed that he had met all of the Department's requirements and was ready to have the children returned to his and mother's custody.

After hearing the evidence and argument, the circuit court terminated father's parental rights under Code § 16.1-283(B) and (C)(2) and approved the foster care goal of adoption. On January 31, 2020, the circuit court entered orders memorializing its rulings. These appeals followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Father argues that the circuit court erred in finding that there was sufficient evidence to terminate his parental rights under Code § 16.1-283(B) and (C)(2). He contends that the Department removed the children because of mother's heroin overdose and the domestic violence that occurred in March 2018, which led to mother's arrest for assault and battery against him. Father acknowledges that he had had a substance abuse problem, but stresses his involvement in methadone treatment.

The circuit court terminated father's parental rights under Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)).

The circuit court found that the Department had "asked and asked and asked and asked for verification on the compliance of the requirements that [it] set out early on in order for [father] and [mother] to substantially remedy the conditions that brought the children to foster care." The circuit court held that father had "not taken . . . steps to remedy" the conditions leading to the children's placement in foster care. The circuit court would not accept father's testimony "without any independent evidence" that he had completed all of his requirements because there had been "multiple, multiple unsuccessful completions previously which were documented by the Department . . . ."

Domestic violence was one of the reasons that the Department had removed the children from the home. Considering father's demeanor during the trial, the circuit court concluded that father's "anger issues have not been addressed." The circuit court found that father had "demonstrated in this courtroom the lack of control and anger" when he could not control his emotions and his attorney had to tell him to "be quiet."

The children had been in foster care since April 2018. The Department had been unable to verify that father had completed the required services since the children entered foster care. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find

out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)). Considering the totality of the evidence, the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2).

"When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cnty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1 (2009); see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Because we find that the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2), we, therefore, do not need to reach the question of whether father's parental rights should also have been terminated under Code § 16.1-283(B).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.